JANVIER, Judge.
This is a suit for damages for physical injuries resulting from the accidental discharge of a mechanical gunpowder operated tool known as a Ramset, which was being used by plaintiff.
It is charged that the tool was defective, and that in spite of its proper use, it discharged when it fell to the floor from a low scaffold on which plaintiff had placed it, and, as a result of the fall, discharged the stud with which it was loaded and that this stud struck plaintiff in the chest and lodged in his neck.
It is alleged that the manufacturer of the tool, one of the defendants, had warranted that such an accident could not occur as there were many safety devices which made accidents impossible, and that this warranty was breached by the accidental discharge of the tool, with the resulting liability in the defendants, Olin Mathieson Chemical Corporation, the manufacturer, and Insurance Company of North America, its insurer.
The plaintiff was not the owner of the tool which had been borrowed by his employer from another contracting company which owned it.
Defendant corporation contended that there was no fault in the tool; denied also-that there was any warranty on which plaintiff could rely as between himself' and the manufacturer, and especially alleged that the accident had resulted fromi carelessness of plaintiff in violating certain instructions as to the use of the machine in that he had left it loaded when it was not actually in use, and especially in that he had not made use of -a mechanical safety button which, had it been pressed, would have made it impossible for the tool to discharge automatically or otherwise.
There was judgment dismissing the suit. Plaintiff has appealed and complains, particularly of the holding of the District Judge that there was no warranty on which) he could rely.
The tool is a remarkably efficient one, but is admittedly very dangerous when not properly used or when the safety devices-are not made use of. It closely resembles; a very large pistol about 13 inches in-length with a curved conventional pistol' grip on the trigger end and a gün barrel on-, the other. It is used in construction worlc to drive a stud, a pin, or a nail into steel' channels which are being attached to inside walls of buildings under construction.. In order to use the tool the mechanic must: place in the breach a gunpowder cartridge-made especially to fit this tool, and in the-barrel in front of the cartridge he must-place the stud, nail or pin which is to be-driven into the work. On the muzzle end of' the tool there is a flat surface or disc through the center of which the end of the-barrel extends and one of the safety fea *221 tures stressed by the manufacturer in its various pamphlets of instruction and information concerning the tool is its claim that it cannot be discharged unless this flat surface is placed squarely against the surface against which the pellet is to be discharged; that if this flat surface is not placed exactly flush on the wall or floor or other surface into which it is to be driven, it is practically impossible for the discharge to be effected.
In order to shoot this tool this surface is pressed against the work; the operator presses hard on the pistol grip handle which causes that end of the tool to he depressed and as this depressing is accomplished, the trigger is pulled and the gun discharges.
There are other safety features which are referred to, but we need only mention that there are others and find it necessary to discuss in detail only the safety button which operates a small threaded metal rod which is alongside the muzzle end of the barrel and which button, when pressed, drops this threaded rod into a position which prevents the depressing of the trigger end of the gun and which then makes it impossible for the gun to be discharged. The only other fact necessary to be discussed is the fact that the plaintiff had left the tool loaded when it was not actually in use.
The plaintiff had used this particular gun on many occasions and was quite familiar with its use, though he says that he was not aware of the safety button, and, in fact, insists that there was no such button on this particular gun.
He found it necessary to erect a low scaffold as the place at which it was necessary for him to use the gun could not he reached except from this scaffold. The gun had been left at another point near where he was working and the safety button had not been set. He asked his helper to load the gun and hand it to him, and when it was handed to him he placed it on the plank top of the scaffold on which he was working. His testimony shows that that plank was warped so that it did not fit squarely on its sawhorse supports, and he says that when he stood on the board it must have shaken the tool off with the result that it fell to the floor with the grip end down and the muzzle end up and was automatically discharged.
Plaintiff charged that on the various pieces of printed instructions and other operating manuals of the manufacturer, there are mentioned a great many safety devices which will prevent any such automatic discharge, and that obviously there must have been something defective or the gun could not have been automatically discharged.
Defendants, on the other hand, maintain that there were two acts of negligence of plaintiff and that had either of them not been committed, the accident would not have occurred — first, as we have already mentioned, that he left the gun loaded when not actually in use, and second, and even more important, that he had not made use of the simple safety button which would have made such an accident impossible.
It is positively shown that plaintiff was in error in stating that this particular gun was not equipped with that safety button, and that in fact plaintiff not only did not make use of it, but was unaware of the fact that it had any such safety feature. He was asked whether he had ever used this particular gun before, and he answered, “I had.” He was asked later almost the same question, and he said that he had used such a gun “for the last four or five years.”
Plaintiff said that he had, on several occasions, been instructed in the use of such a gun; that the instructor would “ * * * demonstrate how to use it * * *.” He was asked:
“Q. Do you remember reading that when you put the gun down and don’t intend to use it, if it’s loaded, you’re supposed to unload it?
“A. Well, yes, I think so.
*222 “Q. You didn’t do that, did you?
“A. No, I didn’t unload it.”
He was shown an operator’s manual which came with- each such gun and said that he had seen such a manual and had read parts of it.
On page 6 of the manual, which is the first page of the instructions on “How to Use the Manual Safety on Your Job-master,” (Jobmaster being the particular gun in question) there are instructions concerning the use of the “Manual Safety Lock.” He was asked whether that page of the instructions concerned this manual safety lock and the setting of it, and he said, “Right.” He said that although he had used such a gun for four or five years, he didn’t read that particular instruction. However, in his pre-trial interrogatories he said he had read the literature concerning the safety rules, and he referred to that literature, saying: “It was mostly safety rules, about safety first and watch what you were doing and all that kind of junk.”
We conclude that plaintiff was extremely negligent in the manner in which he used the tool, as well as in his having placed it on the wobbly surface of the scaffold. But counsel argue that in spite of this there could have been no accident if the tool was as safe as claims the manufacturer in its various instruction manuals, and they point to the fact that an expert placed on the stand by defendants, who had been one of the inventors of the tool, referred to more than twenty safety features some of which he discussed. It is argued that if there were :so many safety features, no carelessness ■on the part of plaintiff could have been the cause of the accident unless there was •some defect in the gun. This expert explained that, in spite of the many safety features and in spite of the fact that the gun could not discharge unless the muzzle end with the referred to disc had been placed squarely against the work, there might be what he termed “one in a million” cases in which the gun might fall to the floor with the grip end down with such force that it might cause that end to depress if the safety button had no been applied.
An examination of the tool convinces us that if that button had been applied, the metal bar which would have dropped into position would have made it absolutely impossible for the rear end to be depressed and would have also made it impossible for the force of the fall or for anything else to cause the depression of the grip end of the gun and consequently would have made it equally impossible for the gun to discharge automatically.
This accident resulted from the carelessness of the plaintiff in the use of a very dangerous tool and this carelessness prevents his recovery.
The judgment appealed from is affirmed.
Affirmed.